R. Parker White, Esq. 95579
**CLAYEO C. ARNOLD,**
**A PROFESSIONAL LAW CORPORATION**
865 Howe Ave. Sacramento CA 95825
Telephone: (916) 777-7777
Facsimile: (916) 924-1829
Email: pwhite@justice4you.com
veronica@justice4you.com
megan@justice4you.com
dominic@justice4you.com

Attorneys for Plaintiff

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MICHAEL DIZ,<br><br>Plaintiff,<br>vs.<br><br>GLENMARK PHARMACEUTICALS INC., USA,<br><br>Defendant, | Case No.: 5:26-cv-00758-JGB-DTB<br><br>THIRD AMENDED COMPLAINT FOR DAMAGES FOR PERSONAL INJURY; DEMAND FOR JURY TRIAL<br><br>1. STRICT LIABILITY;<br>2. STRICT LIABILITY IN TORT – MANUFACTURING DEFECT; and<br>3. NEGLIGENCE |

Comes now Plaintiff MICHAEL DIZ, who alleges and complains as follows on information and belief, and who prays for relief from the court:

**PARTIES**

1. Plaintiff MICHAEL DIZ ("Plaintiff") is a competent adult and resident of California. He is the spouse and heir of Decedent MONIQUE DIZ ("Decedent"). Decedent died due to cardiopulmonary arrest caused by Defendant GLENMARK PHARMACEUTICALS INC., USA, ("Defendant"), Potassium Chloride Extended-Release Capsules USP ("Product"). Plaintiff, as Decedent's sole heir, succeeds to her interest in the matters stated herein and has standing to sue for his wife, seeking all available remedies for the damages alleged herein under the applicable law.

2. Defendant GLENMARK PHARMACEUTICALS INC., USA is a Delaware corporation with its principal place of business in New Jersey. This defendant markets and sells

its pharmaceutical products, including the Product to consumers in the State of California, and is involved in the marketing, distribution, sale, and manufacture of such products to a degree as to make it subject to personal jurisdiction in California for injuries arising from use of such products.

**JURISDICTION AND VENUE**

3. This Court has subject matter jurisdiction under 28 U.S.C. § 1332, which confers original jurisdiction of "all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between ... citizens of different States." 28 U.S.C. § 1332(a).

4. This Court has original jurisdiction over this action under 28 U.S.C. § 1332(a) because complete diversity exists between all parties and the amount in controversy exceeds the sum of $75,000, exclusive of interests and costs. See 28 U.S.C. § 1332(a).

5. Decedent's damages exceed the jurisdictional requirement of $75,000.00.

6. Plaintiff, at all times herein relevant, has resided and been domiciled in the State of California, making him a citizen of California.

7. Plaintiff is informed and believes, and thereby alleges that Defendant GLENMARK PHARMACEUTICALS INC., USA is a business incorporated in the State of Delaware with its principal place of business in New Jersey, making it a citizen of Delaware and New Jersey for the purposes of this suit.

8. Accordingly, there is diversity amongst the parties and the amount in controversy requirement is met.

**GENERAL FACTUAL ALLEGATIONS**

9. Decedent was prescribed and received Defendant's Product just prior to her passing from cardiopulmonary arrest on January 22, 2024.

10. On or about June 25, 2024, the Food & Drug Administration ("FDA") published a press release from Defendant GLENMARK PHARMACEUTICALS INC., USA, announcing that the Product was being recalled due to failed dissolution specifications, consisting of millions of Product.[1] FDA designated the recall as Class I, used to refer to products where use or exposure

[1] Glenmark Pharmaceuticals Inc., USA Issues Voluntary Nationwide Recall for Potassium Chloride Extended-Release Capsules, USP (750 mg) 10 mEq K Due to Failed Dissolution, https://www.fda.gov/safety/recalls-market-

to said products are reasonably probable to cause severe health consequences or death.

11. Defendant GLENMARK PHARMACEUTICALS INC., USA issued a press release on or about June 24, 2024, confirming the product's recall for failed dissolution. Namely, they confirm that "the failed dissolution of potassium chloride extended-release capsules may cause high potassium levels… which can result in irregular heartbeat that can lead to cardiac arrest."[2] Furthermore, "for patients who require chronic use of potassium chloride extended-release oral capsules, especially in those patients with underlying comorbidities or conditions that cause altered excretory mechanisms for potassium… there is a reasonable probability of developing hyperkalemia that may lead to a range of severity of adverse events. From being asymptomatic to more severe potential life-threatening adverse events… such as cardiac arrythmias, severe muscle weakness, and death."

12. Plaintiff is informed and believes, and based thereon alleges, based on the size and expiration date range, that the dissolution defect had existed for an extended period of time, either disregarded or undetected by Defendant, and paired with Defendant's history of quality issues, refers to a systemic disregard for drug safety on their part.[3]

13. Plaintiff is informed and believes, and based thereon alleges, that at all relevant times Defendant GLENMARK PHARMACEUTICALS INC., maintains an office located at 750 Corporate Drive, Mahwah, NJ 07430, as well as several locations within the State of California, and conducts intrastate business within the State of California. As stated in Defendant GLENMARK PHARMACEUTICALS INC., USA's California Corporation Statement of Information, Defendant GLENMARK PHARMACEUTICALS INC., USA's primary focus is on pharmaceuticals product sales.

14. Plaintiff is informed and believes, and based thereon alleges that at all relevant times, Defendant GLENMARK PHARMACEUTICALS INC., USA has engaged in substantial,

---

withdrawals-safety-alerts/glenmark-pharmaceuticals-inc-usa-issues-voluntary-nationwide-recall-potassium-chloride-extended#recall-announcement

[2] *Id.*

[3] FDA, Warning Letter Database, https://www.fda.gov/inspections-compliance-enforcement-and-criminal-investigations/warning-letters/glenmark-pharmaceuticals-limited-582701-10032019 (Warning Letter dated October 3, 2019); https://www.fda.gov/inspections-compliance-enforcement-and-criminal-investigations/warning-letters/glenmark-pharmaceuticals-limited-637314-11222022 (Warning Letter dated November 22, 2022); FDA, Enforcement Report for Glenmark, https://www.accessdata.fda.gov/scripts/ires/index.cfm#tabNav_advancedSearch.

continuous economic activity in California, including marketing, distribution, and sale of billions of dollars in productions to Californians, including but not limited to the Product, and that said activity by Defendant GLENMARK PHARMACEUTICALS INC., USA is substantially connected to the Plaintiff's claims as alleged herein.

15. Plaintiff is informed and believes, and based thereon alleges that at all times relevant, Defendant GLENMARK PHARMACEUTICALS INC., USA, was a Delaware corporation engaged in substantial, continuous economic activity in California, including, but not limited to, marketing, distribution, and sale of billions of dollars in products to Californians, including, but not limited to, the Product.

16. Plaintiff is informed and believes and based thereon alleges that at all times relevant, Defendant was engaged in the business of placing the Product into the stream of commerce by designing, manufacturing, marketing, packaging, labeling, and/or selling said products to Californians, including Decedent herein.

17. Plaintiff is informed and believes and based thereon alleges that at all relevant times, Defendant designed, developed, patented, manufactured, marketed, advertised, promoted, and/or sold the Product worldwide and in the State of California.

18. Plaintiff is informed and believes, and based thereon alleges that, at all times relevant, Defendant falsely represented that the Product met United States Pharmacopoeia ("USP") standards. Defendant expressly marketed the Product as USP-compliant in the name of the drug, printed on its bottles, and on marketing materials for the Product.[4] Despite this, Defendant failed to meet the USP standard governing minimum dissolution time.

19. Defendant's false representations were material and without them would not sell the Product. It is well-known that distributors, pharmacies, and medical providers do not trade in USP-listed drugs that are not USP compliant, giving the USP designation legal and marketing significance, and it is expected by patients and medical providers alike that drugs such as Product adhere to USP and FDA standards all throughout the chain of distribution.

20. Plaintiff is informed and believes, and based thereon alleges that, at all times

---

[4] Glenmark, RX Generic Product Catalog, https://web.archive.org/web/20241103131714/https://glenmarkpharma-us.com/potassium-chloride-extended-release-capsules-usp/

relevant, Defendant was aware that assurances of the Product's USP compliant status were necessary to sell the Product and so advised physicians and medical providers so that they would prescribe them. Accordingly, Defendant intended for all those within the chain of distribution to rely on said representations, and misinformed doctors as learned intermediaries.

21. Plaintiff in this action seeks all available recovery for damages incurred by Decedent, his spouse, as a result of cardiopulmonary arrest which was directly and proximately caused by such wrongful conduct of Defendant and the unreasonably dangerous and defective nature of the Product. Said damages include, but are not limited to, economic losses such as medical and other special damages, as well as pain and suffering, emotional distress, and the consequences of Defendant's wrongful conduct on Decedent's health and life expectancy.

22. Decedent suffered from cardiopulmonary arrest as a direct and proximate result of the unreasonably dangerous and defective nature of the Product and its failed dissolution therein, and Defendant's wrongful and negligent conduct in the research, development, testing, manufacture, production, promotion, distribution, marketing, and sale of the Product. Plaintiff is presently unaware of the batch number.

**FIRST CAUSE OF ACTION**

**STRICT LIABILITY**

23. Plaintiff hereby incorporates each of the preceding paragraphs as if fully set forth herein.

24. Plaintiff is informed and believes, and based thereon alleges that, at all times relevant, Defendant was engaged in the research, development, testing, manufacture, production, promotion, distribution, marketing, and sale of the Product in the regular course of business.

25. Plaintiff is informed and believes, and based thereon alleges that, at all times relevant, Defendant knew and/or should have known of the unreasonably dangerous and defective nature of the Product as alleged herein.

26. Plaintiff is informed and believes, and based thereon alleges that, at all times relevant, Defendants, and each of them, knew and/or should have known that no warnings were being given to consumers or doctors of the serious risks posed by use of the Product, and that

risks were especially present when the Product was used by individuals with underlying comorbidities and conditions.

27. Plaintiff is informed and believes, and based thereon alleges that, at all times relevant, Decedent ingested the Product as prescribed by her medical care providers, which is a reasonably foreseeable use.

28. Plaintiff is informed and believes, and based thereon alleges that, at all times relevant, including at the time of sale and consumption, the Product, when put to the aforementioned reasonably foreseeable use, was in an unreasonably dangerous and defective condition because they failed to contain adequate and proper warnings and/or instructions regarding the USP non-compliance and defective dissolution which carries risk, particularly to individuals such as Decedent, of irregular heartbeat and cardiac arrest. Defendant failed to properly and adequately warn and instruct distributors, pharmacies, medical providers, or consumers such as Decedent, as to the risks and benefits of the Product given their need for this information.

29. Had Defendant properly warned of the defective dissolution and USP non-compliance of the Product, distributors, pharmacies, medical providers, and consumers such as Decedent would not have purchased, prescribed, distributed, or used the Product. As a proximate result of Defendant's design, manufacture, marketing, sale, and distribution of the Product, Decedent passed away.

30. Plaintiff is informed and believes, and based thereon alleges that, at all times relevant, Decedent's cardiopulmonary arrest was the direct and proximate result of the unreasonably dangerous and defective condition of the Product at the time of sale and consumption, including their lack of warnings.

31. Plaintiff is informed and believes, and based thereon alleges that, at all times relevant, the Product was defective because they failed to contain warnings and/or instructions, and breached express warranties and/or failed to conform to express factual representations upon which distributors, pharmacies, medical providers, and consumers such as Decedent justifiably relied in electing to purchase, distribute, prescribe, and/or use the Product. The defect or defects

made the products unreasonably dangerous to consumers such as Decedent who could reasonably be expected to use and rely upon such products. As a result, the defect or defects were a producing cause of Decedent's and Plaintiff's sustained injuries and damages as alleged herein.

**SECOND CAUSE OF ACTION**

**STRICT LIABILITY IN TORT – MANUFACTURING DEFECT**

32. Plaintiff hereby incorporates each of the preceding paragraphs as if fully set forth herein.

33. Plaintiff is informed and believes, and based thereon alleges that, at all times relevant, the Product was engineered, developed, fabricated, manufactured, assembled, equipped, tested or failed to test, inspected or failed to inspect, labeled, advertised, promoted, marketed, supplied, distributed, licensed, and sold by Defendant. Plaintiff is presently unaware of the specific manufacturing defect and will amend this Complaint according to proof.

34. Plaintiff are informed and believe, and based thereon alleges that, at all times relevant, the Product manufactured, supplied, licensed, and/or placed into the stream of commerce by Defendant was defective and unreasonably dangerous in that the Product failed to comply with USP standards and suffered a dissolution defect which can result in heightened potassium levels to the extent of leading irregular heartbeat and cardiac arrest.

35. Plaintiff are informed and believe, and based thereon alleges that, at all times relevant, the aforementioned defect of the Product existed at such time that it was engineered, developed, fabricated, manufactured, assembled, equipped, tested or failed to test, inspected or failed to inspect, labeled, advertised, promoted, marketed, supplied, distributed, licensed, and sold by Defendant.

36. Plaintiff are informed and believe, and based thereon alleges that, at all times relevant, Defendant knew that the Product was to be purchased, prescribed, and used without inspection for defects.

37. Plaintiff are informed and believe, and based thereon alleges that, at all times relevant, the Product was and is unsafe for their intended use by reason of defects in its engineering, development, fabrication, manufacturing, and assembly, so that they would not

safely serve their purpose, but would instead expose the user of said Product to serious injuries.

38. Decedent used the Product in a reasonably foreseeable manner.

39. Plaintiff are informed and believe, and based thereon alleges that, at all times relevant, Defendant engineered, developed, fabricated, manufactured, and assembled the Product defectively, causing the Product to fail to perform as safely as an ordinary consumer would expect when used in an intended or reasonably foreseeable manner.

40. As a legal and proximate result of the aforementioned defects in the engineering, development, fabrication, manufacturing, and assembly of the Product, Decedent and Plaintiff sustained the injuries and damages as alleged herein.

**THIRD CAUSE OF ACTION**

**NEGLIGENCE**

41. Plaintiff hereby incorporates each of the preceding paragraphs as if fully set forth herein.

42. Plaintiff is informed and believes, and based thereon alleges that, at all times relevant, Defendant designed, manufactured, engineered, developed, fabricated, assembled, tested or failed to test, inspected or failed to inspect, labeled, advertised, promoted, marketed, supplied, distributed, licensed, and sold the Product knowing that it was being prescribed to consumers such as Decedent for managing, treating, and/or supplementing medical conditions, including but not limited to low potassium levels in the blood.

43. Plaintiff is informed and believes, and based thereon alleges that, at all times relevant, Defendant knew and/or should have known of the unreasonably dangerous and defective nature of the Product regarding failed dissolution and non-USP-compliance.

44. Plaintiff is informed and believes, and based thereon alleges that, at all times relevant, Defendants, and each of them, knew and/or should have known no warnings were being given to distributors, pharmacies, medical providers, or consumers such as Decedent of the serious risks posed by the Product, especially when ingested by those with underlying comorbidities or conditions.

45. Plaintiff is informed and believes, and based thereon alleges that, at all times

relevant, Defendant was manufacturing, marketing, testing, promoting, selling, and/or distributing the Product in the regular course of business.

46. Plaintiff is informed and believes, and based thereon alleges that, at all times relevant, Decedent ingested the Product as prescribed by her medical care providers, who were not informed of the danger of the Product, which is a reasonably foreseeable use.

47. Plaintiff is informed and believes, and based thereon alleges that, at all times relevant, including at the time of sale and consumption, the Product, when put to the aforementioned reasonably foreseeable use, was in an unreasonably dangerous and defective condition because they failed to contain adequate and proper warnings and/or instructions regarding the USP non-compliance and defective dissolution which carries risk, particularly to individuals such as Decedent, of irregular heartbeat and cardiac arrest. Defendant failed to properly and adequately warn and instruct distributors, pharmacies, medical providers, or consumers such as Decedent, as to the risks and benefits of the Product given their need for this information.

48. Had Defendant properly warned of the defective dissolution and USP non-compliance of the Product, distributors, pharmacies, medical providers, and consumers such as Decedent would not have purchased, prescribed, distributed, or used the Product. As a proximate result of Defendant's design, manufacture, marketing, sale, and distribution of the Product, Decedent passed away.

49. Plaintiff is informed and believes, and based thereon alleges that, at all times relevant, Decedent's cardiopulmonary arrest was the direct and proximate result of the unreasonably dangerous and defective condition of the Product at the time of sale and consumption, including their lack of warnings.

50. Plaintiff is informed and believes, and based thereon alleges that, at all times relevant, the Product was defective because they failed to contain warnings and/or instructions, and breached express warranties and/or failed to conform to express factual representations upon which distributors, pharmacies, medical providers, and consumers such as Decedent justifiably relied in electing to purchase, distribute, prescribe, and/or use the Product. The defect or defects

made the products unreasonably dangerous to consumers such as Decedent who could reasonably be expected to use and rely upon such products. As a result, the defect or defects were a producing cause of Decedent's and Plaintiff's sustained injuries and damages as alleged herein.

WHEREFORE, Plaintiff prays judgment against Defendant as hereinafter follows:

1. For economic damages according to proof;
2. For non-economic damages according to proof;
3. For costs of suit as to all causes of action; and
4. For such other and further relief as the court deems proper.

Date: 9/15/2026

CLAYEO C. ARNOLD
A Professional Law Corporation

By: ______________________________
R. Parker White, Esq.
Attorney for Plaintiff

**DEMAND FOR JURY TRIAL**

Plaintiff demand trial by jury of each cause of action set forth in this complaint and the issues in this matter.

Date: 9/15/2026

CLAYEO C. ARNOLD
A Professional Law Corporation

By: ______________________________
R. Parker White, Esq.
Attorney for Plaintiff

# EXHIBIT 1

R. Parker White, Esq. 95579
**CLAYEO C. ARNOLD,**
**A PROFESSIONAL LAW CORPORATION**
865 Howe Ave. Sacramento CA 95825
Telephone: (916) 777-7777
Facsimile: (916) 924-1829
Email: pwhite@justice4you.com
veronica@justice4you.com
megan@justice4you.com
dominic@justice4you.com

Attorneys for Plaintiff

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MICHAEL DIZ,<br><br>Plaintiff,<br>vs.<br><br>GLENMARK PHARMACEUTICALS INC., USA,<br><br>Defendant, | Case No.: 5:26-cv-00758-JGB-DTB<br><br>THIRD AMENDED COMPLAINT FOR DAMAGES FOR PERSONAL INJURY; DEMAND FOR JURY TRIAL<br><br>1. STRICT LIABILITY;<br>2. STRICT LIABILITY IN TORT – MANUFACTURING DEFECT; and<br>3. NEGLIGENCE |

Comes now Plaintiff MICHAEL DIZ, who alleges and complains as follows on information and belief, and who prays for relief from the court:

**PARTIES**

1. Plaintiff MICHAEL DIZ ("Plaintiff") is a competent adult and resident of California. He is the spouse and heir of Decedent MONIQUE DIZ ("Decedent"). Decedent died due to cardiopulmonary arrest caused by Defendant GLENMARK PHARMACEUTICALS INC., USA, ("Defendant"), Potassium Chloride Extended-Release Capsules USP ("Product"). Plaintiff, as Decedent's sole heir, succeeds to her interest in the matters stated herein and has standing to sue for ~~the wrongful death of~~ his wife, ~~and does so in the action,~~ seeking all available remedies for ~~wrongful death~~ the damages alleged herein under the applicable law.

2. Defendant GLENMARK PHARMACEUTICALS INC., USA is a Delaware corporation with its principal place of business in New Jersey. This defendant markets and sells

its pharmaceutical products, including the Product to consumers in the State of California, and is involved in the marketing, distribution, sale, and manufacture of such products to a degree as to make it subject to personal jurisdiction in California for injuries arising from use of such products.

~~3. Based upon information and belief, Plaintiff alleges that at all times mentioned herein, each and every Defendant was acting as an agent and/or employee or joint venture of each of the other Defendants, and at all times mentioned herein was acting within the course and scope of said agency, employment, and/or joint venture with the full knowledge, permission, and consent of each of the other Defendants. In addition, each of the acts and/or omissions of each Defendant alleged herein were made known to, and ratified by, each of the other Defendants.~~

~~4. Defendants, and each of them, were engaged in a common enterprise for which all have joint liability.~~

~~5. Defendants, and each of them, each endorsed, approved, and ratified the conduct of each of the other in the wrongful acts and omissions alleged herein.~~

**JURISDICTION AND VENUE**

3. This Court has subject matter jurisdiction under 28 U.S.C. § 1332, which confers original jurisdiction of "all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between ... citizens of different States." 28 U.S.C. § 1332(a).

4. This Court has original jurisdiction over this action under 28 U.S.C. § 1332(a) because complete diversity exists between all parties and the amount in controversy exceeds the sum of $75,000, exclusive of interests and costs. See 28 U.S.C. § 1332(a).

5. ~~Plaintiff's claims for the wrongful death of his spouse~~ Decedent's damages exceed the jurisdictional requirement of $75,000.00.

6. Plaintiff, at all times herein relevant, has resided and been domiciled in the State of California, making him a citizen of California.

7. Plaintiff is informed and believes, and thereby alleges that Defendant GLENMARK PHARMACEUTICALS INC., USA is a business incorporated in the State of Delaware with its principal place of business in New Jersey, making it a citizen of Delaware and

New Jersey for the purposes of this suit.

8. Accordingly, there is diversity amongst the parties and the amount in controversy requirement is met.

## GENERAL FACTUAL ALLEGATIONS

9. Decedent was prescribed and received Defendant's Product just prior to her passing from cardiopulmonary arrest on January 22, 2024.

10. On or about June 25, 2024, the Food & Drug Administration ("FDA") published a press release from Defendant GLENMARK PHARMACEUTICALS INC., USA, announcing that the Product was being recalled due to failed dissolution specifications, consisting of millions of Product.[1] FDA designated the recall as Class I, used to refer to products where use or exposure to said products are reasonably probable to cause severe health consequences or death.

11. Defendant GLENMARK PHARMACEUTICALS INC., USA issued a press release on or about June 24, 2024, confirming the product's recall for failed dissolution. Namely, they confirm that "the failed dissolution of potassium chloride extended-release capsules may cause high potassium levels… which can result in irregular heartbeat that can lead to cardiac arrest."[2] Furthermore, "for patients who require chronic use of potassium chloride extended-release oral capsules, especially in those patients with underlying comorbidities or conditions that cause altered excretory mechanisms for potassium… there is a reasonable probability of developing hyperkalemia that may lead to a range of severity of adverse events. From being asymptomatic to more severe potential life-threatening adverse events… such as cardiac arrythmias, severe muscle weakness, and death."

12. Plaintiff is informed and believes, and based thereon alleges, based on the size and expiration date range, that the dissolution defect had existed for an extended period of time, either disregarded or undetected by Defendant, and paired with Defendant's history of quality issues,

---

[1] Glenmark Pharmaceuticals Inc., USA Issues Voluntary Nationwide Recall for Potassium Chloride Extended-Release Capsules, USP (750 mg) 10 mEq K Due to Failed Dissolution, https://www.fda.gov/safety/recalls-market-withdrawals-safety-alerts/glenmark-pharmaceuticals-inc-usa-issues-voluntary-nationwide-recall-potassium-chloride-extended#recall-announcement

[2] *Id.*

refers to a systemic disregard for drug safety on their part.[3]

13. Plaintiff is informed and believes, and based thereon alleges, that at all relevant times Defendant GLENMARK PHARMACEUTICALS INC., maintains an office located at 750 Corporate Drive, Mahwah, NJ 07430, as well as several locations within the State of California, and conducts intrastate business within the State of California. As stated in Defendant GLENMARK PHARMACEUTICALS INC., USA's California Corporation Statement of Information, Defendant GLENMARK PHARMACEUTICALS INC., USA's primary focus is on pharmaceuticals product sales.

14. Plaintiff is informed and believes, and based thereon alleges that at all relevant times, Defendant GLENMARK PHARMACEUTICALS INC., USA has engaged in substantial, continuous economic activity in California, including marketing, distribution, and sale of billions of dollars in productions to Californians, including but not limited to the Product, and that said activity by Defendant GLENMARK PHARMACEUTICALS INC., USA is substantially connected to the Plaintiff's claims as alleged herein.

15. Plaintiff is informed and believes, and based thereon alleges that at all times relevant, Defendant GLENMARK PHARMACEUTICALS INC., USA, was a Delaware corporation engaged in substantial, continuous economic activity in California, including, but not limited to, marketing, distribution, and sale of billions of dollars in products to Californians, including, but not limited to, the Product.

16. Plaintiff is informed and believes and based thereon alleges that at all times relevant, Defendant~~s, and each of them, were~~ was engaged in the business of placing the Product into the stream of commerce by designing, manufacturing, marketing, packaging, labeling, and/or selling said products to Californians, including Decedent herein.

17. Plaintiff is informed and believes and based thereon alleges that at all relevant times, Defendant designed, developed, patented, manufactured, marketed, advertised, promoted,

---

[3] FDA, Warning Letter Database, https://www.fda.gov/inspections-compliance-enforcement-and-criminal-investigations/warning-letters/glenmark-pharmaceuticals-limited-582701-10032019 (Warning Letter dated October 3, 2019); https://www.fda.gov/inspections-compliance-enforcement-and-criminal-investigations/warning-letters/glenmark-pharmaceuticals-limited-637314-11222022 (Warning Letter dated November 22, 2022); FDA, Enforcement Report for Glenmark, https://www.accessdata.fda.gov/scripts/ires/index.cfm#tabNav_advancedSearch.

and/or sold the Product worldwide and in the State of California.

18. Plaintiff is informed and believes, and based thereon alleges that, at all times relevant, Defendants, and each of them, falsely represented that the Product met United States Pharmacopoeia ("USP") standards. Defendants expressly marketed the Product as USP-compliant in the name of the drug, printed on its bottles, and on marketing materials for the Product.[4] Despite this, Defendants failed to meet the USP standard governing minimum dissolution time.

19. Defendant's false representations were material and without them would not sell the Product. It is well-known that distributors, pharmacies, and medical providers do not trade in USP-listed drugs that are not USP compliant, giving the USP designation legal and marketing significance, and it is expected by patients and medical providers alike that drugs such as Product adhere to USP and FDA standards all throughout the chain of distribution.

20. Plaintiff is informed and believes, and based thereon alleges that, at all times relevant, Defendants, and each of them, were was aware that assurances of the Product's USP compliant status were necessary to sell the Product and so advised physicians and medical providers so that they would prescribe them. Accordingly, Defendants, and each of them, intended for all those within the chain of distribution to rely on said representations, and misinformed doctors as learned intermediaries.

21. Plaintiff in this action seeks all available recovery for wrongful death of damages incurred by Decedent, his spouse, as a result of cardiopulmonary arrest which was directly and proximately caused by such wrongful conduct of Defendant and the unreasonably dangerous and defective nature of the Product. Said damages include, but are not limited to, economic losses such as medical and other special damages, as well as pain and suffering, emotional distress, and the consequences of Defendant's wrongful conduct on Decedent's health and life expectancy.

22. Decedent suffered from cardiopulmonary arrest as a direct and proximate result of the unreasonably dangerous and defective nature of the Product and its failed dissolution therein, and Defendant's wrongful and negligent conduct in the research, development, testing,

[4] Glenmark, RX Generic Product Catalog, https://web.archive.org/web/20241103131714/https://glenmarkpharma-us.com/potassium-chloride-extended-release-capsules-usp/

manufacture, production, promotion, distribution, marketing, and sale of the Product. Plaintiff is presently unaware of the batch number.

**FIRST CAUSE OF ACTION**

**STRICT LIABILITY**

23. Plaintiff hereby incorporates each of the preceding paragraphs as if fully set forth herein.

24. Plaintiff is informed and believes, and based thereon alleges that, at all times relevant, Defendants, and each of them, were was engaged in the research, development, testing, manufacture, production, promotion, distribution, marketing, and sale of the Product in the regular course of business.

25. Plaintiff is informed and believes, and based thereon alleges that, at all times relevant, Defendants, and each of them, knew and/or should have known of the unreasonably dangerous and defective nature of the Product as alleged herein.

26. Plaintiff is informed and believes, and based thereon alleges that, at all times relevant, Defendants, and each of them, knew and/or should have known that no warnings were being given to consumers or doctors of the serious risks posed by use of the Product, and that risks were especially present when the Product was used by individuals with underlying comorbidities and conditions.

27. Plaintiff is informed and believes, and based thereon alleges that, at all times relevant, Decedent ingested the Product as prescribed by her medical care providers, which is a reasonably foreseeable use.

28. Plaintiff is informed and believes, and based thereon alleges that, at all times relevant, including at the time of sale and consumption, the Product, when put to the aforementioned reasonably foreseeable use, was in an unreasonably dangerous and defective condition because they failed to contain adequate and proper warnings and/or instructions regarding the USP non-compliance and defective dissolution which carries risk, particularly to individuals such as Decedent, of irregular heartbeat and cardiac arrest. Defendant failed to properly and adequately warn and instruct distributors, pharmacies, medical providers, or

consumers such as Decedent, as to the risks and benefits of the Product given their need for this information.

29. Had Defendant properly warned of the defective dissolution and USP non-compliance of the Product, distributors, pharmacies, medical providers, and consumers such as Decedent would not have purchased, prescribed, distributed, or used the Product. As a proximate result of Defendant's design, manufacture, marketing, sale, and distribution of the Product, Decedent passed away.

30. Plaintiff is informed and believes, and based thereon alleges that, at all times relevant, Decedent's cardiopulmonary arrest was the direct and proximate result of the unreasonably dangerous and defective condition of the Product at the time of sale and consumption, including their lack of warnings.

31. Plaintiff is informed and believes, and based thereon alleges that, at all times relevant, the Product was defective because they failed to contain warnings and/or instructions, and breached express warranties and/or failed to conform to express factual representations upon which distributors, pharmacies, medical providers, and consumers such as Decedent justifiably relied in electing to purchase, distribute, prescribe, and/or use the Product. The defect or defects made the products unreasonably dangerous to consumers such as Decedent who could reasonably be expected to use and rely upon such products. As a result, the defect or defects were a producing cause of Decedent's and Plaintiff's sustained injuries and damages as alleged herein.

**SECOND CAUSE OF ACTION**

**STRICT LIABILITY IN TORT – MANUFACTURING DEFECT**

32. Plaintiff hereby incorporates each of the preceding paragraphs as if fully set forth herein.

33. Plaintiff is informed and believes, and based thereon alleges that, at all times relevant, the Product was engineered, developed, fabricated, manufactured, assembled, equipped, tested or failed to test, inspected or failed to inspect, labeled, advertised, promoted, marketed, supplied, distributed, licensed, and sold by Defendant. Plaintiff is presently unaware of the specific manufacturing defect and will amend this Complaint according to proof.

34. Plaintiff are informed and believe, and based thereon alleges that, at all times relevant, the Product manufactured, supplied, licensed, and/or placed into the stream of commerce by Defendant was defective and unreasonably dangerous in that the Product failed to comply with USP standards and suffered a dissolution defect which can result in heightened potassium levels to the extent of leading irregular heartbeat and cardiac arrest.

35. Plaintiff are informed and believe, and based thereon alleges that, at all times relevant, the aforementioned defect of the Product existed at such time that it was engineered, developed, fabricated, manufactured, assembled, equipped, tested or failed to test, inspected or failed to inspect, labeled, advertised, promoted, marketed, supplied, distributed, licensed, and sold by Defendant.

36. Plaintiff are informed and believe, and based thereon alleges that, at all times relevant, Defendant knew that the Product was to be purchased, prescribed, and used without inspection for defects.

37. Plaintiff are informed and believe, and based thereon alleges that, at all times relevant, the Product was and is unsafe for their intended use by reason of defects in its engineering, development, fabrication, manufacturing, and assembly, so that they would not safely serve their purpose, but would instead expose the user of said Product to serious injuries.

38. Decedent used the Product in a reasonably foreseeable manner.

39. Plaintiff are informed and believe, and based thereon alleges that, at all times relevant, Defendant engineered, developed, fabricated, manufactured, and assembled the Product defectively, causing the Product to fail to perform as safely as an ordinary consumer would expect when used in an intended or reasonably foreseeable manner.

40. As a legal and proximate result of the aforementioned defects in the engineering, development, fabrication, manufacturing, and assembly of the Product, Decedent and Plaintiff sustained the injuries and damages as alleged herein.

**THIRD CAUSE OF ACTION**

**NEGLIGENCE**

41. Plaintiff hereby incorporates each of the preceding paragraphs as if fully set forth

herein.

42. Plaintiff is informed and believes, and based thereon alleges that, at all times relevant, Defendant designed, manufactured, engineered, developed, fabricated, assembled, tested or failed to test, inspected or failed to inspect, labeled, advertised, promoted, marketed, supplied, distributed, licensed, and sold the Product knowing that it was being prescribed to consumers such as Decedent for managing, treating, and/or supplementing medical conditions, including but not limited to low potassium levels in the blood.

43. Plaintiff is informed and believes, and based thereon alleges that, at all times relevant, Defendant~~s, and each of them,~~ knew and/or should have known of the unreasonably dangerous and defective nature of the Product regarding failed dissolution and non-USP-compliance.

44. Plaintiff is informed and believes, and based thereon alleges that, at all times relevant, Defendants, and each of them, knew and/or should have known no warnings were being given to distributors, pharmacies, medical providers, or consumers such as Decedent of the serious risks posed by the Product, especially when ingested by those with underlying comorbidities or conditions.

45. Plaintiff is informed and believes, and based thereon alleges that, at all times relevant, Defendant was manufacturing, marketing, testing, promoting, selling, and/or distributing the Product in the regular course of business.

46. Plaintiff is informed and believes, and based thereon alleges that, at all times relevant, Decedent ingested the Product as prescribed by her medical care providers, who were not informed of the danger of the Product, which is a reasonably foreseeable use.

47. Plaintiff is informed and believes, and based thereon alleges that, at all times relevant, including at the time of sale and consumption, the Product, when put to the aforementioned reasonably foreseeable use, was in an unreasonably dangerous and defective condition because they failed to contain adequate and proper warnings and/or instructions regarding the USP non-compliance and defective dissolution which carries risk, particularly to individuals such as Decedent, of irregular heartbeat and cardiac arrest. Defendant failed to

properly and adequately warn and instruct distributors, pharmacies, medical providers, or consumers such as Decedent, as to the risks and benefits of the Product given their need for this information.

48. Had Defendant properly warned of the defective dissolution and USP non-compliance of the Product, distributors, pharmacies, medical providers, and consumers such as Decedent would not have purchased, prescribed, distributed, or used the Product. As a proximate result of Defendant's design, manufacture, marketing, sale, and distribution of the Product, Decedent passed away.

49. Plaintiff is informed and believes, and based thereon alleges that, at all times relevant, Decedent's cardiopulmonary arrest was the direct and proximate result of the unreasonably dangerous and defective condition of the Product at the time of sale and consumption, including their lack of warnings.

50. Plaintiff is informed and believes, and based thereon alleges that, at all times relevant, the Product was defective because they failed to contain warnings and/or instructions, and breached express warranties and/or failed to conform to express factual representations upon which distributors, pharmacies, medical providers, and consumers such as Decedent justifiably relied in electing to purchase, distribute, prescribe, and/or use the Product. The defect or defects made the products unreasonably dangerous to consumers such as Decedent who could reasonably be expected to use and rely upon such products. As a result, the defect or defects were a producing cause of Decedent's and Plaintiff's sustained injuries and damages as alleged herein.

WHEREFORE, Plaintiff prays judgment against Defendant~~s, and each of them,~~ as hereinafter follows:

1. For economic damages according to proof;
2. For non-economic damages according to proof;
3. For costs of suit as to all causes of action; and
4. For such other and further relief as the court deems proper.

Date: 9/15/2026

CLAYEO C. ARNOLD
A Professional Law Corporation

By: ____________________________
R. Parker White, Esq.
Attorney for Plaintiff

**DEMAND FOR JURY TRIAL**

Plaintiff demand trial by jury of each cause of action set forth in this complaint and the issues in this matter.

Date: 9/15/2026

CLAYEO C. ARNOLD
A Professional Law Corporation

By: ____________________________
R. Parker White, Esq.
Attorney for Plaintiff